UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SAMUEL NETERVAL-QUIEL,
LEAH NETERVAL-QUIEL,

        Plaintiffs,

                                           Case No. 21-cv-1279-bhl

    v.

SENTRY INSURANCE COMPANY,

        Involuntary Plaintiff,

    v.

CMC SRL, et al.,

        Defendants.

## ORDER GRANTING AND DENYING MOTIONS TO DISMISS

The question before the Court is whether it can exercise personal jurisdiction over three Italian companies. Defendants Lomek SRL (Lomek), CMC SRL (CMC), and XL Insurance Company SE Rappresentanza Generale Per L'Italia (XL) have each filed Motions to Dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). Because the Court does not have jurisdiction over Lomek or XL, their motions will be granted. CMC's motion will be denied.

### FACTUAL BACKGROUND

On February 22, 2021, Plaintiff Samuel Neterval-Quiel fell approximately 40 feet out of a bucket attached to a CMC Arbor Pro #83HD+ aerial work platform boom lift (the Platform) when the boom mast collapsed. (ECF No. 1 ¶¶18-20.) He suffered serious injuries, including a shattered sacrum and permanent nerve damage, both of which required surgical intervention and ongoing treatment. (*Id.* ¶21.) He subsequently brought this lawsuit against various companies in the Platform's manufacturing and distribution chain, as well as their insurers. (*Id.* ¶¶4-14.)

For purposes of the pending motions, four Defendants are of particular relevance. Defendant Lomek, a foreign corporation incorporated and with a principal place of business in

Italy, designed and manufactured the boom lift that was ultimately attached to the Platform. (*Id.* ¶¶8, 10.) Defendant CMC, a foreign corporation incorporated and with a principal place of business in Italy, designed and manufactured pieces of the Platform and performed final assembly. (*Id.* ¶¶5, 7.) Defendant XL issued an insurance policy to CMC. (*Id.* ¶6.) XL is the Italian branch of XL Insurance Company SE, which is organized as a *Societas Europaea* under the laws of the European Union, with its principal place of business in the Republic of Ireland. (ECF No. 34 at 1-2.) And Defendant All Access Equipment, Inc. (All Access), a Massachusetts corporation with its principal place of business in Wilmington, Massachusetts, served as the North American distributor of CMC's products. (ECF No. 1 ¶¶11, 13.) As such, All Access sold the allegedly defective Platform that precipitated this action to Neterval-Quiel's employer, Arbor Pro, an arborist company based in Wisconsin. (*Id.* ¶14.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) governs a defendant's challenge to a federal court's ability to hear a case for lack of personal jurisdiction. *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 799 (7th Cir. 2014). Under the rule, unless the plaintiff can establish that personal jurisdiction exists, the complaining defendant must be dismissed. *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). If the defendant submits "affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the existence of jurisdiction." *Id.* at 783. But the Court should construe conflicting affidavits in the plaintiff's favor. *Id.* at 782.

## ANALYSIS

Although the record shows four pending motions to dismiss, (ECF Nos. 25, 31, 66, and 68), there are, functionally, only two. Intervenor Pioneer Specialty Insurance Company (Pioneer) had not joined the case at the time of the initial motions to dismiss. (*See* ECF No. 62) (permitting Pioneer to intervene after Defendants' motions to dismiss were fully briefed). As a result, the moving parties filed new motions to dismiss directed specifically against Pioneer. (ECF Nos. 66 and 68). Because Pioneer relies solely on the same jurisdictional facts raised in opposition to the initial motions, these new motions amount to little more than a procedural redundancy. Thus, the Court will address Lomek's motions against Plaintiffs and Pioneer, (ECF Nos. 25 and 66), as a single motion. It will do the same with CMC's and XL's motion. (ECF Nos. 31 and 68). Because

the record confirms the Court does not have personal jurisdiction over Lomek, its motion will be granted.  The Court will also grant XL's motion but will deny CMC's request for dismissal.

## I.       The Court Cannot Exercise Personal Jurisdiction Over Defendant Lomek.

Lomek argues that it is not subject to personal jurisdiction in this Court because it is an Italian company whose involvement in this case ended when it shipped a boom lift arm to CMC, also in Italy.  (ECF No. 26 at 2.)  Plaintiffs agree that the Court may not have jurisdiction over Lomek and thus "take no position on the Lomek motion."  (ECF No. 37 at 1.)  Pioneer has not even filed a response.

When a defendant moves to dismiss for lack of personal jurisdiction, the burden shifts to the plaintiff to establish that jurisdiction exists.  *See Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012).  And if the defendant submits "affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction."  *Purdue Rsch. Found.*, 338 F.3d at 783.

Here, Lomek submitted evidence that called into question this Court's ability to exercise personal jurisdiction.  (*See* ECF No. 26-1.)  Plaintiffs responded agnostically, taking "no position on the Lomek motion."  (ECF No. 37 at 1.)  That might have sufficed had Lomek not introduced reason to doubt the jurisdictional facts alleged in the complaint.  But fence-sitting is inconsistent with Plaintiffs' duty to "go beyond the pleadings."  *Purdue Rsch. Found.*, 338 F.3d at 783. Therefore, Lomek's motion must be granted.  Lomek will be dismissed from the case for want of personal jurisdiction, and because "[a] suit dismissed for lack of jurisdiction cannot *also* be dismissed 'with prejudice,'" that dismissal will be without prejudice.  *Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004) (citation omitted).

## II.      The Court Has Personal Jurisdiction Over Defendant CMC, But It Cannot Exercise Personal Jurisdiction Over Defendant XL.

CMC and XL both argue that the Court lacks personal jurisdiction over them.  In addition, XL argues that, even if personal jurisdiction exists, it should be dismissed on *forum non conveniens* grounds.  Because the Court has personal jurisdiction over CMC, it must remain in the case.  But because the Court finds that it lacks personal jurisdiction over XL, it will dismiss XL from the case without reaching the merits of its *forum non conveniens* argument.

**A. Under the Stream of Commerce Theory, CMC Has Sufficient Contacts with Wisconsin to Warrant the Exercise of Personal Jurisdiction.**

Where, as here, no federal statute authorizes nationwide service of process, personal jurisdiction is governed by the law of the forum state. *See Felland*, 682 F.3d at 672 (citing Fed. R. Civ. P. 4(k)(1)(A)). "Wisconsin's long-arm statute, Wis. Stat. § 801.05, has been interpreted to confer jurisdiction 'to the fullest extent allowed under the due process clause.'" *Id.* at 678 (quoting *Daniel J. Hartwig Assocs., Inc. v. Kanner*, 913 F.2d 1213, 1217 (7th Cir. 1990)). That means, so long as this Court's exercise of personal jurisdiction would comport with the Fourteenth Amendment's Due Process clause, jurisdiction is properly established. *Id.* ("Once the requirements of due process are satisfied, then there is little need to conduct an independent analysis under the specific terms of the Wisconsin long-arm statute itself because the statute has been interpreted to go to the lengths of due process.").

Personal jurisdiction comports with Fourteenth Amendment due process if it is established either generally or specifically. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Court*, 141 S. Ct. 1017, 1024 (2021). General jurisdiction exists where the defendant is "at home." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). An incorporated business entity is at home in its state of incorporation and the location of its principal place of business, usually its headquarters. *See International Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945). The parties do not dispute that general jurisdiction does not apply in this case because CMC is an Italian corporation headquartered in Italy. (*See* ECF Nos. 39, 42, and 70.)

Specific jurisdiction exists where the defendant has sufficient contacts with the forum state. *Walden v. Fiore*, 571 U.S. 277, 285 (2014). There are three essential requirements: "(1) the defendant must have purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state; (2) the alleged injury must have arisen from the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice." *Felland*, 682 F.3d at 673 (internal citations omitted).

In this case, the parties dispute whether the Court can exercise specific personal jurisdiction over CMC pursuant to the so-called "stream of commerce" theory. (ECF Nos. 42 at 18 and 56 at 9.) First described in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980), that theory provides one method by which a plaintiff may satisfy the purposeful availment element of the minimum contacts analysis. *See J.S.T. Corp. v. Foxconn Interconnect Tech., Ltd.*, 965 F.3d 571,

575 (7th Cir. 2020). Under the stream of commerce theory, a "forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state." *World-Wide Volkswagen*, 444 U.S. at 297-98. The Seventh Circuit "is among those that apply the stream of commerce theory in products liability cases." *J.S.T.*, 965 F.3d at 575. Therefore, a defendant may be subject to specific jurisdiction in this Court if it "delivers products into a stream of commerce, originating outside the forum state, with the awareness or expectation that some of the products will be purchased in the forum state." *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 550 (7th Cir. 2004).

CMC likens itself to the manufacturer in *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 886 (2011), a case in which a plurality of the Supreme Court held the manufacturer lacked sufficient contacts to establish personal jurisdiction under a stream of commerce theory. In *J. McIntyre*, a New Jersey plaintiff brought a products liability claim against the U.K. manufacturer of a metal shearing machine. *Id.* at 878. The machine had been sold through the manufacturer's U.S. distributor and wound up in New Jersey, where it badly injured the plaintiff. *Id.* The plaintiff argued the manufacture was subject to personal jurisdiction in New Jersey based on three facts: "[the] distributor agreed to sell [the manufacturer's] machines in the United States; [the manufacturer's] officials attended trade shows in several States but not in New Jersey; and up to four machines ended up in New Jersey." *Id.* at 886. The Supreme Court held these facts were insufficient to fairly hale the manufacturer into a New Jersey court. *Id.*

CMC insists *J. McIntyre* controls here because All Access—CMC's North American distributor—agreed to sell its products in the United States and at least one of those products wound up injuring Samuel Neterval-Quiel in Wisconsin. *See id.* at 891 (noting that a producer is not subject to jurisdiction in all 50 states just because it is aware that an independent distributor sells its products "nationwide"). But this case is different. Notably, the plaintiff in *J. McIntyre Machinery* failed to show that the manufacturer "delivered its goods in the stream of commerce 'with the expectation that they [would] be purchased' by New Jersey users." *Id.* at 889 (quoting *World-Wide Volkswagen*, 444 U.S. at 297-98). Here, by contrast, Plaintiffs and Defendant All Access (who filed a crossclaim against CMC), (ECF No. 22), argue that available evidence shows that CMC did expect Wisconsin residents to purchase their products. For instance, beginning in July 2020, All Access sent CMC detailed, monthly sales reports complete with the name and

address of each purchaser and the serial number of the machine sold. (ECF No. 42-1 at 2; ECF No. 58 at 3.) These reports indicate that, between January 3, 2018 and April 30, 2020, at least 24 CMC products were purchased and installed in the state of Wisconsin. (ECF No. 42-3 at 1-10.) Two more followed in June and October 2020. (ECF Nos. 42-4 and 42-5.) CMC questions the reports' authenticity, (ECF No. 56 at 5-6), but "in evaluating whether" a prima facie case of personal jurisdiction has been established, "the plaintiff 'is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record.'" *Purdue Rsch. Found.*, 338 F.3d at 782 (quoting *Nelson v. Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983)). Thus, to the extent the legitimacy of the warranty reports is in dispute, the Court must resolve that dispute in Plaintiffs' favor.

As further support for personal jurisdiction, Plaintiffs and All Access point to a copy of a 2016 invoice for parts shipped directly from CMC in Italy to a customer in Madison, Wisconsin. (ECF No. 42-7.) And a 2013 email thread demonstrates that CMC also agreed to ship a missing plate to a customer in Brookfield, Wisconsin. (ECF No. 42-8 at 1-2.) CMC contends that neither the invoice nor the email chain implies knowledge of sales in Wisconsin—the products may have been purchased elsewhere and taken to Wisconsin for maintenance. Yet the weight of the evidence suggests that, at the time of Samuel Neterval-Quiel's injury and the filing of this lawsuit, CMC knew and assented to the sale of its products in Wisconsin. *See Johnson v. Woodcock*, 444 F.3d 953, 955-56 (8th Cir. 2006) ("'Minimum contacts must exist either at the time the cause of action arose, the time the suit was filed, or within a reasonable period of time immediately prior to the filing of the lawsuit.'") (quoting *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 562 (8th Cir. 2003)); *see also LG Elecs., Inc. v. Quanta Comput., Inc.*, 520 F. Supp. 2d 1061, 1068 (W.D. Wis. 2007) (noting that "the existence of personal jurisdiction is determined at the time of filing") (citing *Cent. States, Se. and Sw. Areas Pension Fund v. Phencorp Reinsurance Co., Inc.*, 440 F.3d 870, 877-78 (7th Cir. 2006)). CMC therefore purposefully availed itself of the Wisconsin market.

This result comports with Seventh Circuit precedent. In *Giotis v. Apollo of the Ozarks, Inc.*, 800 F.2d 660 (7th Cir. 1986), the Seventh Circuit held that "[a] seller at the head of a distribution network . . . satisfies the requisite foreseeability of due process where it 'delivers its products into the stream of commerce with the expectation that [the products] will be purchased by consumers in the forum state.'" *Id.* at 667 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985)). As with CMC, the defendants in *Giotis* were out-of-state manufacturers who

sold their products through an interim distributor. *Id.* at 662. They challenged personal jurisdiction in the Eastern District of Wisconsin because they did not ship any of their products directly to Wisconsin. *Id.* at 668. In fact, unlike the present case, in *Giotis*, the offending products only arrived in Wisconsin after the plaintiff bought them from the interim distributor in Minnesota and unilaterally transported them across state lines. *Id.* Nonetheless, because the manufacturers knew that the interim distributor advertised the products in Wisconsin, the Seventh Circuit found purposeful availment satisfied. *Id.* at 667-68. In the present case, CMC knew that All Access sold its products in Wisconsin. It "reap[ed] the economic benefit" of these sales. *Id.* at 667. But with economic benefit comes legal exposure. That informs the risk-reward calculus all companies must make when entering a market, and they may not simplify the math by accepting the profits and disclaiming the perils.

With purposeful availment satisfied, Plaintiffs and All Access must also demonstrate that the alleged injury arose from CMC's forum-related activities. In products liability suits like this one, that is not difficult. As the Seventh Circuit has noted, in the context of products liability suits, "downstream sales . . . bear on 'the relationship among the defendant, the forum, and the *litigation*.'" *J.S.T.*, 965 F.3d at 576 (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)) (emphasis in original). "Thus, when a defendant takes steps to reach consumers in a forum state, it has created a relationship with the forum state that has special relevance to the litigation at issue." *Id.* It might be helpful to contrast this case with *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cnty.*, 137 S. Ct. 1773 (2017). In that case, the plaintiffs were a group of consumers who had purchased the defendant's products in other states, suffered injuries in those other states, and then attempted to sue the defendant in California on the grounds that the defendant also sold the allegedly harmful products there. *Id.* at 1777. The Supreme Court held that there was no connection between the defendant's forum-related activities and the injuries alleged; those injuries occurred outside of California. By contrast, CMC's allegedly defective product harmed Samuel Neterval-Quiel in Wisconsin, the state where he filed his lawsuit. Thus, the logic of *J.S.T.* applies, and the causal element is satisfied.

All that remains is for Plaintiffs and All Access to prove that the Court's exercise of personal jurisdiction over CMC would comport with traditional notions of fair play and substantial justice. In determining the fairness of exercising jurisdiction, Courts consider factors like "'the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining

relief.'" *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 945 (7th Cir. 1992) (quoting *Asahi Metal Indus. Co. v. Superior Court of California, Solano Cnty.*, 480 U.S. 102, 113 (1987)). The Court "'must also weigh . . . the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies.'" *Id.*

In *Giotis*, the Seventh Circuit found the exercise of personal jurisdiction comported with fairness and justice because the allegedly defective product was used in Wisconsin (the proposed forum state), the defects surfaced in Wisconsin, a Wisconsin resident was injured, and Wisconsin had a compelling interest in regulating the conduct of manufacturers that expose Wisconsin residents to the hazards of defective products. *Giotis*, 800 F.2d at 668. But the manufacturers in *Giotis* did not hail from foreign countries. And the Supreme Court in *Asahi* held that the burden on a defendant was severe where it would have to defend itself in a foreign land, subject to a foreign legal system. *Asahi*, 480 U.S. at 114. The Court went on to state, however, that "[w]hen minimum contacts have been established, often the interest of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Id.* The problem in *Asahi* was that the only remaining plaintiff in the case was a Taiwanese corporation, and the only defendant was Japanese. *Id.* As a result, the forum state (California) had no legitimate interest in resolving the dispute. *Id.* That is not an issue in this case where the plaintiffs are Wisconsin residents whose claims arise from defects uncovered while the allegedly defective product was being used in Wisconsin. And this is not an instance where the quality and nature of the interstate transaction is "so 'random,' 'fortuitous,' or 'attenuated' that it cannot fairly be said that the potential defendant 'should reasonably anticipate being haled into court.'" *Burger King*, 471 U.S. at 486 (quoting *World-Wide Volkswagen*, 444 U.S. at 297). At the time this lawsuit was filed, CMC knew that at least 26 of its products had been sold and installed in Wisconsin. There is nothing random or unforeseeable about a products liability action arising from alleged malfunctions with one of those products.

Because Plaintiffs and All Access have demonstrated that CMC has sufficient contacts with Wisconsin, specific jurisdiction exists. The Court will, therefore, exercise personal jurisdiction over CMC and deny its request to be dismissed from the case.

**B. The Court Cannot Exercise Personal Jurisdiction Over Defendant XL.**

Alongside CMC, Defendant XL also challenges personal jurisdiction in the Eastern District of Wisconsin. According to XL, it is the Italian branch of an Irish entity that has no affiliate branches in the United States and, in fact, refuses to issue insurance through United States brokers or even engage with any insurance agent or broker located or headquartered in the United States. (ECF No. 34 at 1-3.) As relevant to this action, XL issued a liability insurance policy to CMC in Italy upon the mutual understanding that any dispute related to the policy would be adjudicated in an Italian forum under Italian law. (*Id.* at 3.)

Plaintiffs offer nothing to dispute these jurisdictional facts. All Access admits that, at this point, not enough is known about XL's affairs in the United States but requests jurisdictional discovery on the grounds that such discovery will show XL's knowledge of CMC's sales in Wisconsin, which All Access argues would confer jurisdiction. (ECF No. 42 at 24.)

Jurisdictional discovery is warranted only if, at a minimum, the plaintiff establishes "a colorable or prima facie showing of personal jurisdiction." *Cent. States, Se. and Sw. Area Pensions Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000) (citing *Ellis v. Fortune Seas, Ltd.*, 175 F.R.D. 308, 312 (S.D. Ind. 1997)). Therefore, a plaintiff's discovery request will be denied "'if it is only based upon bare, attenuated, or unsupported assertions of personal jurisdiction.'" *Kimberly-Clark Worldwide, Inc. v. Fameccanica Cata SpA*, No. 10-C-0917, 2011 WL 2634287, at *4 (E.D. Wis. July 5, 2011) (quoting *Owner Operator Resources, Inc. v. Maag*, No. 1:02-cv-332, 2003 WL 21911061, at *5 (N.D. Ind. Mar. 28, 2003)). Additionally, "[f]oreign nationals usually should not be subjected to extensive discovery in order to determine whether personal jurisdiction over them exists." *Reimer Express*, 230 F.3d at 946 (citation omitted).

All Access suggests that limited discovery into XL's knowledge of CMC's business dealings will provide the necessary jurisdictional hook. (ECF No. 24-25.) The unspoken assumption here is that an insurer who covers a sailboat released into the stream of commerce consents to jurisdiction in that sailboat's destination. This has no basis in law. The whole point of the "purposeful availment" requirement is to prevent ensnarement of a defendant based on "the 'unilateral activity of another party or a third person.'" *Burger King Corp.*, 471 U.S. at 475 (quoting *Helicopeteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)). Even a parent company is not subject to personal jurisdiction because of the acts of its subsidiaries unless the parent dominates the subsidiary and corporate formalities are not substantially observed.

*Reimer Express*, 230 F.3d at 944. In other words, a parent's mere knowledge of its subsidiary's business in a particular jurisdiction does not render the parent amenable to suit there. And the relationship at issue here, between the insurer and the insured, is much less intimate. XL and CMC have virtually no connection save a single insurance policy, issued in Italy. There is no question that if XL were CMC's parent company, it would not be subject to personal jurisdiction in Wisconsin. The Court cannot accept a contrary result here, where XL occupies the significantly less authoritative role of insurer. Therefore, because All Access' proposed discovery would not in any way help to establish personal jurisdiction over XL, that request must be denied. *See LG Electronics*, 520 F. Supp. 2d at 1072 (holding that jurisdictional discovery is inappropriate where a party fails to demonstrate that such discovery will help supplement its jurisdictional allegations) (citation omitted). This means that XL's jurisdictional facts are uncontroverted, which, in turn, means Plaintiffs and All Access have not carried their burden to establish personal jurisdiction. As a result, XL must be dismissed from this case, and, once again, dismissal must be without prejudice.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant Lomek SRL's motions to dismiss, ECF Nos. 25 and 66, are **GRANTED**, and Lomek is **dismissed without prejudice.**

**IT IS FURTHER ORDERED** that Defendants CMC SRL's and XL Insurance Company SE Rappresentanza Generale Per L'Italia's motions to dismiss, ECF Nos. 31 and 68, are **GRANTED, in part,** and **DENIED, in part**. The motions are granted with respect to XL, and XL is **dismissed without prejudice**. The motions are denied with respect to CMC.

Dated at Milwaukee, Wisconsin on September 12, 2022.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge